BRYANT v. SALING.

APRIL TERM
1837.

Bryant v. Saling.

| 4 | 522 |
| 57a | 407 |

4    522
102a ²549

1. A. agrees to pay B. for a certain stone wall, when he (A.) should build on the same, sell the same or dispose of the lot, on which it was constructed.

Held, that A. is entitled to a reasonable time to build or sell, and until that event takes place B. cannot recover.

What would be a *reasonable* time must depend on the circumstances of each case.

*Wright,* for appellant:

This action was instituted before a justice of the peace, by the plaintiff against the defendant, on the 27th January, 1837, on the following paper:

"Samuel Bryant in account with William Saling, 1835, 1836. Dr. To building a rock foundation for a house in the town of Paris, and furnishing all the materials: —— feet by ——. $63 33; for which, said Bryant agreed to pay the said Saling the sum of money aforesaid, after the work was done."

On a trial by a jury the defendant had judgment, and the plaintiff appealed to the circuit court of Monroe.

At the March term of that court, the defendant moved to dismiss the cause for want of an account being filed against him, which the court overruled.

He then moved for a continuance of the cause, at the costs of the plaintiff, for want of notice of the appeal; which motion, the court likewise overruled.

A trial of the cause was then had, and the verdict being rendered in favor of the plaintiff, the defendant moved for a new trial, because the verdict was against law and evidence; which motion, was also overruled, and the plaintiff had judgment.

The defendant brings this case to this court by appeal.

The questions which arise from the determination of this court, are

1st. Did the court err in refusing to dismiss the appeal.

2nd. Did the court err in refusing a continuance at the costs of the plaintiff.

3rd. Did the court err in refusing a new trial.

The first two questions may be considered as one, since they arise upon the same objection.

The law regulating proceedings in justice's courts, provides, "That in every suit founded on an account, a bill of items of such account shall be filed with the justice, *before any process shall be issued in the suit.*" See M. Laws, page 351, sec. 9. The Legislature attached some importance to this matter, for they declare it *"shall be filed"* before *any* process shall be issued. An account filed

against A. can never justify process against B. If the statute mean any thing, it requires that the account filed shall be against the *person* to be sued, and that it shall contain a *specification* of the demand.

The account filed is liable to another objection. It specifies neither day, week, nor month, but intimates that the liability arose within the years 1835, 1836. This is too loose for the purposes of justice, although its administration be summary.

2nd. The verdict was clearly wrong—(see the evidence as preserved in the bill of exceptions.)

The jury interfered between the parties, and changed their contract. Bryant never employed Saling to build the foundation. Saling erected the wall for himself, with a view to build on it a brick house of a certain description; and the only benefit sought by Bryant, was the privilege of joining to the wall. But Saling failed to put up the house, without fault on the part of Bryant, and he abandoned the idea of fulfilling his engagement. It cannot be pretended, that in that attitude of the matter, he could recover any thing for work and labour done, or materials furnished. The wall foundation was so much labour lost—lost by his own wrong, or folly or misfortune.

Bryant did not stand upon his legal rights. He did not contract for a wall—he did not want it—but since it was built by Saling, whenever he did want it—whenever he should realize out of it a benefit to himself, he was willing that benefit should accrue to Saling. "Saling then surrenders to him the rock; but whenever Bryant built on the wall—or sold the said wall or lot, or otherwise disposed of the rock, that *then* and *not till then*, was Bryant to pay Saling for the rock, at the price found by the referees."

It is not pretended that either of these events has happened. It cannot be urged that Bryant has realized any benefit from the wall; yet, against the plain, obvious and emphatic provisions of his contract, he has been forced to pay for it. There was no legal obligation on Bryant to pay for it at all. He agrees to pay on certain, reasonable conditions. Can any court strike off the conditions and make his obligation absolute?

Courts, under their power to interpret contracts, have in a few peculiar cases, disregarded incongruous, or impossible conditions. Thus, in the case tried in the northern circuit, before Lord Macclesfield—"a girl in consideration of £20, submitted herself to the pleasure of a man; he was so ungenerous, afterwards, as to refuse pay-

ment, and she was obliged to sue him upon his note; which in the beginning of it, was mentioned to be for £20 borrowed and received, but at the latter end were these words: *which I promise never to pay*." My Lord Maccles-field held, that here is a good foundation for an assumpsit *upon the lending* on one side, *and the borrowing on the other ;* and the words in the conclusion of the note will make no variation. But it is not allowable to interpret what has no need of interpretation. "*Questies in verbis nulla est ambiguitas, ibi nulla expositio centra verba facienda est.*" And the case at bar is of that character.

Besides, the conditions are reasonable and proper.

*P. Williams,* for appellee:

The first point upon which the appellee relies to sustain the verdict of the jury, and judgment of the court below is, that the testimony strongly preponderates in favor of the finding of the jury, instead of strongly against the verdict.

This court has sustained this point in the case of Mc-Knight and Brady vs. Samuel Wells. The point in this case, and the principle laid down by the court was: that, if the facts as they appear on the record did warrant a finding the one or the other, according as extrinsic circumstances incline. In this case, the court will not reverse a judgment because a new trial was refused. 1 vol. D. S. C. p. 13. And also, in the case of Singleton vs. Mann, page 464, vol. the 2nd. This court has expressly decided that this court will not grant a new trial, unless the evidence is stronger against the verdict, than for it; and not then, unless it should strongly preponderate. The appellee could cite the court to numerous common law authorities, sustaining the doctrine settled in these two cases above, but we deem it wholly unnecessary to do so in this case.

The plaintiff proves by Ford, that Saling called on him to measure the work, and he handed the estimate of the work to him, and Bryant said he would stand to it, or go it; which is a clear assumption on the part of Bryant to pay the amount that the work was estimated at by Ford. Vanarsdale states, he was called on by both parties to measure the work, in the summer or autumn of 1835 ; and that the work came to $62 or $63, or thereabouts; $60 at least, and over. This witness understood from the parties, that Saling had agreed to build a brick house on the lot on which the work was done. Bryant was to give the lot to Saling as soon as the house was built.—

APRIL. TERM 1837.

Bryant v. Saling.

This agreement was before the work was commenced, and under these circumstances the wall was begun. Afterwards, Saling declined building the house, and then the witness was called on to measure the work. The witness handed the estimate to defendant, with Ford: the defendant said it was high, and plaintiff said it came to more than he expected. James Buford, a witness for the plaintiff, stated that prior to the time the work was measured, he proposed buying the lot of the defendant on which the wall was built; that defendant asked him $100, which he had concluded to give. Sometime after the measurement of the work by Ford and Vanarsdale, the witness called on the defendant again, who then asked him $150 for the lot, with the rock, which he thought was too high—he Buford thought, when he first proposed to buy, that $100 was a fair price for the lot, and in that first conversation, the defendant referred him to Saling for the rock—and here endeth the plaintiff's evidence—which clearly shews a direct undertaking on the part of Bryant, to pay Saling for the rock wall, and an express offer to sell the rock wall to Buford, with the lot, for $150; without any evidence to shew, that he was acting as the agent of Saling. Therefore, the lot and the rock from the evidence, were his. This testimony was fully sufficient to justify the jury in finding for the plaintiff, and fully justify the court in overruling the motion for a new trial, because the facts well warrant the jury in finding the one way or the other, as extrinsic circumstances might have inclined, and strongly preponderates in favor of the verdict.

The evidence produced by the defendant presents a question of law; and in the abstract, reasonable time includes both law and fact. But it seems to be clear, that in particular cases, reasonable time may either be an inference of law from the particular facts—that is, when they are such as to fall within any general known rule of law, or may depend upon the conclusion of the jury, that the time is reasonable or not in point of fact, with reference to the ordinary practice and course of dealing, or to a man's duty as a moral agent, under the particular circumstances of the case. 2 Strange, 1271; Co. Litt., 56; Willes, 135 and 206, part III; 3 Starkie, 1407. The defendant was to pay the plaintiff for the rock and wall, when he built on the wall or sold the said wall or lot, or otherwise disposed of the rock. Then, according to the evidence of the defendant, the original agreement was rescinded in relation to the building the house, and

the defendant was to pay the estimate put on the work done by Saling, for the defendant, upon the happening of any one of these three events or contingencies. The appellee holds the law to be this: that when A. agrees to pay B. a certain sum of money for a valuable consideration, upon the happening of a certain event, and the happening of the event is under the control of the party who agrees to pay, and no particular time is agreed on by the parties, when the event or contingency shall take place, that the party is liable in a reasonable time, whether the event or contingency takes place or not, which is a matter of fact to be left to the jury, in the ordinary course of dealing, or a man's duty as a moral agent, under the particular circumstances of the case; and may, in the abstract, be an inference of law from the particular facts, when they are such as to fall within any known rule of law—see 3 Starkie, 1407. And as before cited, the cardinal rule of construction in all contracts, is to give it effect according to the real intent of the parties, to be collected from all the terms of the agreement;—Cobb vs. Fountain; 3 Randolph, 487; 2 Kent, 557, 2nd edition. So in construing a contract, the court will look to the motives that led to it, and the object intended to be effected by it,—Davis vs. Barny; 2 Gill and Johnson, 382; Chitty on Cont., page 21 and 22. Bryant could not have believed at the time he said he would go it, or in other words, pay Saling for the rock wall, that Saling was to wait at his will and pleasure for the payment of the money, for work and labour, before rendered to the use and benefit of Bryant. Neither could Saling have so understood the contract, nor so have accepted it. Such an inference as this from the contract, would be an irrational conclusion. The appellee holds, that the time from the summer or autumn of 1835, until the commencement of this suit, is a reasonable time for the happening of any one of those events or contingencies, and that the circuit court did not err in overruling the defendant's motion for a new trial.

It is perfectly immaterial whether Saling agreed to build a house on the lot of Bryant; and when the work was completed, Bryant was to have the benefit of joining walls, as the consideration of the gift, if it could be so considered, and Saling declined building the house. That contract being rescinded in toto, and the rock wall was not given to defendant to rescind the contract—and Bryant afterwards taking the rock wall, and work and labour of Saling, for which he asked Buford $50 in the sale of

the lot; and his agreement to pay Saling upon the princi-
ples before stated, will entitle the plaintiff to recover in
the action.   We cannot therefore, see any principle of
law upon which this court will reverse the judgment be-
low, and award a new trial in this cause; and as to the
facts, they strongly preponderate in favor of the verdict.

Opinion of the court, delivered by McGirk, Judge.
   An action of assumpsit was brought by Saling against
Bryant, for work and labor and materials found by Sal-
ing for Bryant, in and about building a stone wall for the
foundation of a house.   In the circuit court of Monroe
county, Saling had judgment for fifty-five dollars.   Bry-
ant moved the court for a new trial, for the following
reasons:—1st, Because the verdict is against evidence.
2d, The verdict is against law;—the court overruled the
motion.   The only point made in the cause is, that the
circuit court erred in refusing a new trial.   By the testi-
mony, it appears that Bryant was the owner of a lot of
ground in the town of Paris, in the county of Monroe,
that he offered to give the lot to Saling, on condition that
Saling would build thereon a certain house in a given
time, and that Bryant should have the privilege of joining
to the wall of Saling's house another building when he
should build.   That Saling built a stone wall on the lot
for a foundation; that he then declined going on with the
building, and thereupon it was agreed that Bryant should
pay for the wall at such price as should be fixed on by
P. Ford and W. K. Vanarsdale; that these two persons'
fixed on the value of the work to be sixty dollars, and
that when they presented the estimate to Bryant, he said
it was high, but that he would stand it.   That Bryant was
not to pay for the wall until he should build on the same,
sell the same, or sell the lot, or otherwise dispose of the
rock.   It farther appeared that this wall stood at the trial
of this cause as it did when the arrangement was made,
not sold, nor disposed of in any way.   That after this
agreement was made, about fifteen months elapsed before
the bringing this suit.   It appears that after Saling had
declined building, Bryant asked about $100 for the lot,
and Saling about $50 for the rock, and that after Bryant
became the owner of the stone, he asked for the lot and
stone wall $150, and the person who proposed the pur-
chase, declined on the ground that the sum was too high.
Mr. Wright, for Bryant, insists that the court erred in
refusing a new trial.   That the jury erred in finding the
verdict, because the event on which Bryant was to pay

for the stone had not happened.

Mr. Williams, for Saling, insists that time enough did elapse after the agreement was made, and before the suit was brought for Bryant to have either sold the lot and rock, or the rock alone, or to have built on the same, and that it was his duty to have proceeded to do the one or the other immediately, and having failed to do so, he is liable to pay for the rock. The first rule that may, with safety, be affirmed in regard to contracts of this kind is, that where money is to be paid on the happening of any event, the money is not to be paid till the event takes place. That when no time is fixed for the performance of the act, the party, who is to perform it, is to have a reasonable time to perform the act. That what is reasonable time, is to be determined by the nature of the act to be performed, having a just regard to the ability of the party to do the act, and how it may effect his interest to perform it, to perform the act by hasty or tardy measures at one particular time, or at any other.

In the case at bar, the witness says, the money was not to be paid until the lot and rock were sold, built on or used by Bryant; but the jury, or court sitting as a jury, have declared the law to be that, he is bound to pay, although no use has been made of the wall by Bryant, and for the reason that Bryant was bound to proceed to sell, build on, or use the rock immediately. It is clear to our minds that, in so viewing the case, great injustice has been done, and the law has been misapplied.

Mr. Williams, for Saling, has cited the case of Brekenridge's administrators, vs. Lee's executors, 3 Bibb's Rep. 329, to prove that it was the duty of Bryant to have sold or used the stone wall, so that the money would be due to Saling. In that case, the purchaser of a tract of land, covenanted to pay the vendor £10 for 100 acres of land, and that none was to be paid till the title should be clearly, legally, and indisputably ascertained; and also that the purchaser was, at his own expense, to proceed to investigate the title—no time was fixed on when the investigation was to be made. Nine or ten years afterwards suit was brought for the money. The defendants relied on the ground that the title had not been ascertained and investigated. The court held that it was the duty of the defendant to have proceeded immediately on the investigation of the title, and not having done so, was liable. We see no objection to the principle of this case;—in this case it is evident the party's duty was to proceed and investigate the title as speedily as the forms of law and the

APRIL TERM
1837.

Bryant v. Saling.

A. agrees to pay B. for a certain stone wall, when he (A.) should build on the same, sell the same, or dispose of the lot, on which it was constructed. Held, that A. is entitled to a reasonable time to build or sell, and until that event takes place, B. cannot recover. What would be a *reasonable* time must depend on the circumstances of each case.

nature of the business would permit. If nine or ten years would not be enough, the defendant should have shewn it, but *prima facie*, the time would seem to be long enough. In the case before us, fifteen months might, or might not, be timeenough to enable Bryant to perform the act.

In the first place the wall was built by Saling entirely with a view to his own interest, and when he found it would not be to his interest to build a house on the same, he began to cast about in his mind how he should dispose of the wall to pay him for his labor;—the wall was on Bryant's land.

It seems he had the liberty to take the rock away, and sell the same to whomsoever he could: but this he perhaps could not do without a loss, or if he could, why did he not do it? He seems to have come to the conclusion that the best thing he could do would be to let Bryant use the wall to build on, or to let him. if he sold the lot, sell the wall with it; or to let him otherwise use or sell the stone as might suit him best. In all this proposed arrangement, Bryant had nothing to gain; he might have kept the rock and wall without paying any thing therefor, as the same was on his land, and Saling declined fulfiling the conditions on which he was to have the lot. In this condition of things, Bryant agreed to do that which some other men would not have agreed to do. He agrees that if he builds on the wall he will pay for it; or that if he should sell the lot and the wall with it, then he will pay for it; or that if he should sell the rock of the wall alone, then he will pay for it;—but that as he was to gain nothing by the agreement, he stipulated that until he received some benefit from the transaction in some way, he was not to pay any thing. This was the bargain. Saling now argues as he might do if he had done the work for Bryant at his request. He seeks to hurry Bryant into a sale of the lot for his benefit, without regard to the question whether Bryant would not lose by the sale of the lot;—he seeks to make Bryant sell, or otherwise use, the stone, that he may get his money. This is somewhat unjust, and somewhat ungracious, too. The true spirit of this agreement is, that Bryant is to have a reasonable time to accomplish the agreement, and he is not bound to hasten or sacrifice that property. Is it not altogether a matter of accommodation to Saling to undertake to pay at all? In fact there is no consideration for the contract, till Bryant realizes something in the shape of benfit from the wall.

In this view of the case, the verdict is clearly and en-

tirely against the evidence, and the judgment entirely against the law of, and right of the case. Judgment recovered with costs.