CHRISTOPHER A. GHIO, Respondent, *v.* ELEAZER J. BEARD, Appellant. |11a 21| |31a 161|

### July 12, 1881.

1. The facts in this case are substantially as in *Keane* v. *Beard*, *ante*, p. 10, and are held to warrant a recovery.

2. A contract of subscription to the capital stock of a corporation is a several contract between the subscriber and the corporation, and in a suit to recover back the money paid thereunder, for failure of consideration, the other subscribers need not be joined.

3. Purely technical errors committed on the trial are not sufficient cause for a reversal of a judgment which is manifestly for the right party.

APPEAL from the St. Louis Circuit Court, WICKHAM, J. *Affirmed*.

A. J. P. GARESCHÉ, for the appellant.

GIVEN CAMPBELL, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This case grows out of the same subject-matter as the case of *Keane* v. *Beard*, *ante*, p. 10. The plaintiff was one of the adventurers who advanced money to Beard to

be used by the latter in purchasing the notes held by the Boatman's Savings Bank, which were secured by a deed of trust upon the leasehold property formerly owned by the Guardian Building Company. The amount advanced by the plaintiff was $2,000, and he has recovered a judgment for this amount with interest; from which the defendant appeals.

In their pleadings in this case, as compared with those in the former case, counsel for the plaintiff and the defendant appear to have changed positions somewhat. In that case, it will be remembered, the plaintiff's position was that the money which he advanced was advanced upon an agreement that a corporation was to be formed with a stock of about $40,000, of which the defendant was to take about three-fourths; that the idea had been abandoned, and that the defendant refused to carry out his agreement to form a corporation, or to refund the plaintiff's money. The defendant's answer, in effect, denied that there was an agreement to form a corporation, but admitted that he had received the advance of money from the plaintiff upon an agreement to use it in purchasing the notes in question and to give the plaintiff an interest in the notes; and then set up that he had foreclosed the deed of trust and taken the title in his own name for the purpose of protecting the interest of the parties who had advanced money to assist in purchasing the notes, and that he was entitled so to hold the property and to appropriate the profits, until he should get back what he had advanced for the purchase of it

On the other hand, the plaintiff in this case simply states that he advanced $2,000 to the defendant to be used by the latter in purchasing the notes in question, upon an agreement that the plaintiff was to have an interest in the notes when purchased equal to the extent of his money so advanced, and upon no other consideration. It then recites that the defendant did purchase the notes in question; caused the deed of trust to be foreclosed; bid in the property and

acquired title thereto in his own name, and has ever since kept it for his own use, refusing to account to the plaintiff, or to refund the sum so advanced, in violation of the agreement. The answer admits the payment to the defendant of the sum of $2,000 for the purchase of the notes in question ; that the defendant did purchase said notes, did foreclose the deed of trust, and took title in his own name, and has ever since collected the rents, and denies that the plaintiff is entitled to receive anything from the defendant until the defendant has been paid the amount which he advanced towards acquiring the property in question. It denies that the advance was made to the defendant upon the agreement stated in the petition ; but alleges that it was made under, and in pursuance of the agreement embodied in the contract of subscription to the stock of the " Washington Avenue Building Association," which is set out at length in the opinion in *Keane* v. *Beard* (*supra*), and which the defendant sets out in full in his answer. But the defendant further alleges that " subsequent to said subscriptions, but before the payment of any one of them, he purchased said notes and mortgage, and subsequently, the parties being unable and unwilling to make up the capital stock of said corporation, the idea of a corporation was abandoned, and none has ever since been formed, and the subscribers herein above named paid to the defendant the sums respectively set opposite their names to be by him credited upon the sum so by him paid for the purchase of said notes and mortgage, and that he should hold the same in trust for them ; that out of the net rents, and, after deduction made for the said sum of $2,000 and five per cent on collections, he should repay himself for his advances, and such payment, when complete, would dissolve the trust, and the property revert to said subscribers to be by them held according to the ratio of their respective interests, the said Keane one-eighteenth, the said Jackson two-eighteenths, and the said

Murphy, Burns, and Ghio each four-eighteenths" [meaning nineteenths].

The answer, also, as in the former case, pleads a nonjoinder of parties and that the suit should abate for this reason.

This answer admits that the plaintiff advanced $2,000 to the defendant upon substantially the consideration stated in the petition. It admits that in consequence of the abandonment by the parties of the project of forming a corporation the consideration has failed. If it stopped here it would concede a clear right of action in the plaintiff, upon the principle stated in the preceding case, to recover the money so advanced, with interest. But it goes further, and sets up in substance a new agreement, namely, that the defendant was to acquire title to the property in his own name, and hold it on substantially the terms embraced in the contract of subscription, until the defendant, out of the net profits of the property had been reimbursed the amount which he himself had advanced toward acquiring it; and whether there was such a subsequent agreement, is the only question at issue in the case. The record is long; the testimony is much more ample than in the other case. The defendant himself testified at great length, and several other witnesses were brought in, who did not testify in the other case. But the evidence wholly fails to show any such subsequent agreement as the defendant has set up in his answer, and there is nothing in it which would have made it proper for the court to put to the jury the question. On the pleadings and evidence the court might well, at the close of the case, have directed the jury to find for the plaintiff. For the record may be read forward and backward and round and round, and it shows this and only this: that the plaintiff advanced this sum to the defendant at the same time that other sums were advanced by other persons, to the aggregate of $9,500, upon an agreement that the de-

fendant should make up the rest; that with the aggregate so made up, the property in question should be acquired; that a corporation should be formed to own it; that the plaintiff, and the others who made advances at the same time with him, should have shares of the stock of the corporation equal to the amount of their advances; that the money so advanced was used by the defendant in acquiring the property; but that, instead of acquiring it in the name of the corporation to be formed for that purpose, or in the names of himself and the persons so making the advances, including the plaintiff, he acquired title to the property in his own name, entered into possession, and has ever since been collecting and enjoying large profits from it, upon a claim wholly inconsistent with the original contract. There is no evidence whatever that the plaintiff ever assented that he should hold the property in his own name, manage it at his pleasure, and, when repaid the amount which he had put into the venture, with interest compounded at ten per cent per annnm, his co-adventurers might have the property. The plaintiff and the other co-adventurers have precisely the same right to have the rents and profits applied to their advances that the defendant has to have them applied to the liquidation of his advances. It is a mere assumption on his part, for which the evidence affords no warrant, that he stands in any better position in this respect than the plaintiff and his other co-adventurers.

This being the case, we are not at liberty to reverse the judgment on account of technical errors which the court may have committed in the trial of the cause. If judgments were reversed for such errors, there is scarcely a judgment which we are called upon to review which would stand. The statute forbids us to do this. Rev. Stats., sect. 3775.

The count in the answer, which is in the nature of a plea in abatement for the non-joinder of parties, must be dis-

posed of by what was said upon the same point in the previous case. We may add, that so far as questions of procedure are concerned, the contract of subscription to the capital stock of a corporation has always been regarded as a several contract between each subscriber and the corporation or other contracting party. And upon a suit brought by a subscriber to rescind the contract, in equity, or to recover his money at law, it has never been held necessary, so far as we know, to join the other subscribers or sharholders, as defendants. There is here no evidence of a joint engagement other than that pleaded, *in hæc verba*, in the defendant's answer, and to that the defendant himself has refused to become a party, though he occupies the position of claiming everything under it which inures to his benefit.

The case was fairly tried, though possibly not without technical errors. The jury have found the only verdict which they could have rightfully found under the evidence, and judgment has been rendered thereon. This judgment is affirmed. The other judges concur.